RENDERED:  JANUARY 21, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2018-CA-0575-MR

JACK HOLLAND                                                    APPELLANT


ON REMAND FROM KENTUCKY SUPREME COURT
(FILE NO. 2019-SC-0720-DG)

v.                   APPEAL FROM OLDHAM CIRCUIT COURT
HONORABLE KAREN A. CONRAD, JUDGE
ACTION NO. 80-CR-00065



COMMONWEALTH OF KENTUCKY                                        APPELLEE



OPINION
AFFIRMING

** ** ** ** **


BEFORE:  CLAYTON, CHIEF JUDGE; CETRULO AND DIXON, JUDGES.

CLAYTON, CHIEF JUDGE:  This case is before us on remand from the Kentucky

Supreme Court for further consideration in light of that Court's recent decision in

*Commonwealth v Crumes*, 630 S.W.3d 630 (Ky. 2021).  Upon further review, we

affirm the Oldham Circuit Court's order.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 20, 1980, Barbara Helm went missing after leaving work at the Blue Boar Cafeteria in Louisville, Kentucky. Four days later, on January 24, 1980, Helm's body was found on a roadside embankment in nearby Oldham County, Kentucky. On January 30, 1980, Jack Holland – Appellant herein – was questioned, for the second time in as many weeks, by authorities about Helm's disappearance. He denied having any part in Helm's disappearance and claimed that he had been with one Larry James at an establishment known as the Do Drop Inn and, later, at Wendell's Tavern, both located in Louisville, at the time Helm disappeared. James was later questioned and confirmed Holland's alibi.

Later, George Waldridge offered information related to the Blue Boar crimes in exchange for leniency in regard to charges related to a motor vehicle accident in which he had earlier been involved. The authorities arranged for Waldridge to contact Holland and discuss the Blue Boar crimes, but under the guise of discussing a fictitious bank robbery. The ensuing conversation was to be monitored and recorded by the authorities.

A subsequent phone call between Waldridge and Holland, during which the two agreed to meet later in the day to discuss the would-be robbery, was

recorded. The meeting that took place was monitored, as well, and law enforcement arrested Holland and James later that evening.

At trial, Waldridge testified that Holland had asked for his help in robbing the Blue Boar and that he had confessed to killing Helm. Holland was found guilty and convicted of the robbery and murder of Helm. He was sentenced to twenty years' imprisonment for the robbery and the death penalty for murder. However, the Kentucky Supreme Court reversed and remanded on appeal. On remand, Holland, pursuant to *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), pleaded guilty to one count of murder and one count of robbery in the first degree, and was found to be a second-degree persistent felony offender. He was sentenced to life imprisonment on March 5, 1987.

In August of that year, John W. Stewart, an Assistant Commonwealth's Attorney in Jefferson County, wrote a letter (hereinafter referred to as the "Stewart letter") to Bruce Hamilton, the Commonwealth's Attorney for Oldham County. This letter was in response to Hamilton's apparent efforts to obtain the cooperation of the Jefferson County Commonwealth Attorney's office in getting George Waldridge to be placed in a "safe place" within the Kentucky Department of Corrections. Stewart declined to assist, explaining that he viewed Waldridge in a negative light, and that, in his opinion, Waldridge would "do anything or say anything for anybody in an attempt to better his cause." Stewart

further commented that Waldridge, during his Jefferson County trial, had "alleged that Detective Ashcraft [(a detective that was initially involved in investigating the Blue Boar crimes)] coerced his testimony in [Appellant's] murder trial by physically abusing him prior to his testimony."

In December of 1993, Appellant filed a CR[1] 60.02 motion with the Oldham County Circuit Court. Appellant's requested relief was denied via order entered on May 9, 1994.

On April 3, 1997, Appellant filed a motion pursuant to RCr[2] 11.42, alleging ineffective assistance of counsel. The trial court appointed counsel to represent Appellant in the associated proceedings, and on April 15, 2002, an evidentiary hearing was held on Appellant's motion. The motion was denied via an order and opinion entered by the lower court on April 29, 2002. This Court affirmed the lower court's judgment on September 5, 2003, via an unpublished opinion. The Kentucky Supreme Court entered an order denying discretionary review on March 10, 2004.

On January 29, 2004, Appellant filed a second CR 60.02 motion in Oldham County Circuit Court. The motion was, once again, denied. On this occasion, however, the trial court denied the motion as improper because, in its

---

[1] Kentucky Rules of Civil Procedure.

[2] Kentucky Rules of Criminal Procedure.

view, the issues raised by the new motion had already been raised in the RCr 11.42 motion. Appellant did not appeal the trial court's order.

Subsequently, on March 17, 2005, Appellant filed a petition for *habeas corpus* in the United States District Court for the Western District of Kentucky. Appellant fared no better in federal court, however, and on February 7, 2006, the federal district court entered an order denying Appellant's requested *habeas* relief.

Finally, on March 21, 2016, Appellant filed the motion that would ultimately serve as the subject of this appeal. Proceeding *pro se*, Appellant filed yet another CR 60.02 motion, alleging *Brady*[3] violations, as well as several other *pro se* motions. The trial court appointed counsel to assist Appellant with his post-conviction motions, and counsel supplemented Appellant's CR 60.02 motion. Thereafter, counsel supplemented Appellant's motion once again, this time raising additional claims under RCr 11.42. On September 29, 2017, the Commonwealth filed a response to Appellant's motions. Appellant later filed a reply and made clear that he intended to seek an evidentiary hearing.

## ANALYSIS

Within Appellant's combination CR 60.02/RCr 11.42 motion, he claimed that Waldridge had been coerced into testifying that Appellant had

---

[3] *See Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

committed the robbery and murder of Helm. Specifically, Appellant claimed that the aforementioned Detective Ashcraft, after Waldridge had indicated that he was unwilling to testify against Appellant, had "plac[ed] his knee in [Waldridge's] chest while Waldridge was sitting and slapp[ed] him for approximately 4 to 5 minutes to make [Waldridge] testify that [a]ppellant Jack Joe Holland committed the robbery and murder" and to testify that Appellant had requested Waldridge's assistance in committing the Blue Boar crimes.

Appellant made a number of arguments in his motion. First, Appellant claimed that his counsel was ineffective in failing to make him aware of testimony presented during Waldridge's trial in which Waldridge stated that Detective Ashcraft had physically coerced his testimony in Appellant's trial. Second, Appellant claimed that the Stewart letter constituted exculpatory evidence, and that, had he known about the information contained in the letter, he would not have pleaded guilty, but would instead have insisted on going to trial.

In addition to the Stewart letter, Appellant pointed to the existence of an affidavit executed on October 21, 2016, and signed by Waldridge. Within that affidavit, Waldridge recanted the testimony he had offered at Appellant's first trial, stating that he had "testified at the trial of Jack Holland," but that Holland had "never told [him] that he had committed the Blue Boar murder of Barbara Helm."

On March 27, 2018, the trial court, without holding an evidentiary hearing on the matter, entered an order denying Appellant's motions. The court held that Appellant's counsel was only required to conduct a "reasonable investigation for evidence" and that "requiring counsel to review trial transcripts of an unrelated criminal case [(Waldridge's case)] far exceed[ed] 'reasonable professional assistance.'" The trial court further found that Appellant was not prejudiced by trial counsel's performance. Therefore, the court denied Appellant's requested relief under RCr 11.42.

Regarding the CR 60.02 motion based on the affidavit of Waldridge, the court held that a hearing was unnecessary because of the inherent unreliability of Waldridge's recantation. The court pointed to the fact that Waldridge did not recant until counsel for Appellant interviewed him in prison in 2016. It noted that Appellant had previously assaulted Waldridge and that Appellant had been recently denied a hearing before the parole board that would likely result in his imprisonment until his death. The court held that Waldridge's affidavit was unreliable. Following the trial court's denial, Appellant filed this appeal.

We originally held in this appeal that the trial court properly denied the RCr 11.42 motion which was based on errors of counsel or exculpatory evidence. However, we reversed and remanded the trial court as it related to the CR 60.02 motion because of the failure of the trial court to hold an evidentiary

hearing on the credibility and reliability of Waldridge's recantation. We held that an evidentiary hearing was needed to determine the veracity of the contents of the affidavit. The Kentucky Supreme Court granted discretionary review, vacated, and remanded our decision for our reconsideration under the subsequently decided *Crumes* case. In *Crumes*, the Supreme Court held that deciding on the credibility of the witness and the reliability of the recantation is the responsibility of the trial court which cannot be disturbed by the appellate court absent an abuse of discretion. The trial court did hold an evidentiary hearing in *Crumes* and denied the CR 60.02(f) motion.

As stated we review the denial of a CR 60.02 motion under an abuse of discretion standard. The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles. *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999). Therefore, we will affirm the lower court's decision unless there is a showing of some "flagrant miscarriage of justice." *Gross v. Commonwealth*, 648 S.W. 2d 853, 858 (Ky. 1983). Before the movant is entitled to an evidentiary hearing on a CR 60.02 motion, he must affirmatively allege facts which, if true, justify vacating the judgment and further allege special circumstances that justify CR 60.02 relief. *Gross*, 648 S.W.2d at 856.

The trial court in this matter reviewed the pleadings of the parties, and the issues were fully briefed. The court was aware of Waldridge's sworn statement as well as the facts that gave rise to the recantation. "The general rules are that recanting testimony is viewed with suspicion; . . . the trial judge is in the best position to make the determination because he has observed the witnesses and can often discern and assay the incidents, the influences and the motives that prompted the recantation; and his rejection of the recanting testimony will not lightly be set aside by an appellate court." *Thacker v. Commonwealth*, 453 S.W.2d 566, 568 (Ky. 1970).

The trial court denied Appellant's CR 60.02 motion. In denying relief, the trial court relied on *Taylor v. Commonwealth*, 175 S.W.3d 68 (Ky. 2005), for the proposition that recanted testimony is unreliable and, therefore, afforded very little weight. The trial court also noted that Waldridge only changed his testimony after counsel for Appellant interviewed him in prison in 2016; that Waldridge had previously been assaulted by Appellant; and that Appellant, not Waldridge, had recently been denied parole, which would likely result in Appellant's imprisonment until death. The trial court, therefore, determined that Waldridge was an "unreliable witness whose testimony carrie[d] little weight," and held that a hearing was not necessary to make a determination as to reliability.

We cannot say that the trial court abused its discretion in not

holding an evidentiary hearing or in denying the CR 60.02 motion. The parties were given a meaningful opportunity to address the motion. The court was aware that Waldridge recanted approximately 25 years after the trial concluded and held that the facts "are undisputed and speak for themselves," and therefore a hearing was not necessary to determine the credibility of Waldridge's recantation. The court considered the facts, the arguments, and the law in reaching its decision. An evidentiary hearing was not necessary. Therefore, we affirm the trial court in all respects.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Jack Joe Holland, *pro se*
Eddyville, Kentucky

BRIEF FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky
(former)

Matthew R. Krygiel
Assistant Attorney General
Frankfort, Kentucky